PREMO PHARMACEUTICAL LABORA-
TORIES, INC., Plaintiff,

v.

USV LABORATORIES, INC. and USV
Pharmaceutical Corporation,
Defendants.

No. 79 Civ. 2824.

United States District Court,
S. D. New York.

July 3, 1979.

Kirschstein, Kirschstein, Ottinger & Cobrin, P. C. by Peter T. Cobrin and Bertram Ottinger, New York City, for plaintiff.

Kenyon & Kenyon by Paul Lempel and Edwin Baranowski, New York City, for defendants.

FINDINGS OF FACT AND CONCLU-
SIONS OF LAW RE: APPLICATION
FOR PRELIMINARY INJUNCTION

OWEN, District Judge.

1. This is a declaratory judgment patent action instituted by plaintiff Premo Pharmaceutical Laboratories, Inc. ("Premo") for a declaration, *inter alia*, that U.S. Patent 3,055,904 ("the '904 patent") is "invalid and void." Defendant USV Laboratories, Inc. ("USV") has counterclaimed against Premo for infringement of claim 3 of the '904 patent and seeks a preliminary injunction against Premo restraining Premo's sales of the oral antihypertensive diuretic pharmaceutical, chlorthalidone, claimed in claim 3 of the '904 patent.

2. The complaint was filed on May 31, 1979. By a Memorandum and Order dated June 13, 1979 ("Memorandum and Order") this Court issued a temporary restraining order against Premo, prohibiting its making, using or selling chlorthalidone.

3. Plaintiff Premo is a New York corporation having its principal place of business in South Hackensack, New Jersey.

4. Defendant USV Laboratories is a Delaware corporation with offices in Tuckahoe, New York.

5. Defendant USV Pharmaceutical Corporation ("USV Pharmaceutical") is a New York corporation with offices in Tuckahoe, New York.

6. The '904 patent was issued on September 25, 1962 and is entitled "New Isoindoline Derivatives." The '904 patent was issued to Geigy Chemical Corporation of Ardsley, New York as assignee of the inventors Wilfried Graf, Erich Schmidt and Willy G. Stoll. By successive assignments the '904 patent was assigned to USV which is now the owner of the entire right, title and interest in and to the patent, including the right to recover for infringement thereof.

7. Claim 3 of the '904 patent claims "1–oxo–3–(3'–sulphamyl–4'–chloro–phenyl)–3–hydroxy–isoindoline," a composition of matter known generically as "chlorthalidone." It is not disputed that the patent, if valid, is infringed by Premo.

8. The '904 patent covers a medication of great commercial success, was acquired by USV at substantial expense, and represents a substantial commercial value to

USV, to which USV continues to make a substantial financial commitment.

9. The '904 patent has been in force for 16 years and 8 months of its total 17-year life without attack or question.

10. The commercial success of chlorthalidone during the life of the patent has clearly provided a significant motivation to attack the validity of the '904 patent, and Ciba-Geigy's circularization in 1970 of the sale of the patent in suit together with other valuable assets taken together with the interest expressed therein at the time by many chemical and pharmaceutical companies throughout the world without subsequent attack is strong affirmative evidence of long industry acceptance of the validity of the patent.

11. Thus for approximately 16 years and 8 months, the pharmaceutical industry has respected the validity of the '904 patent, or, stated differently, the patent has been the subject of long acquiescence by the pharmaceutical industry.

12. Further, on the basis of the evidence now before me, and notwithstanding the highly instructive and learned testimony of Dr. Ajay K. Bose, Premo's expert witness, it appears that at the time of the invention of chlorthalidone, given the state of the prior art, chlorthalidone was a novel and structurally unobvious pharmaceutical composition.

13. Chlorthalidone (a) is orally active; (b) has low toxicity and high therapeutic ratio; (c) is long acting and is not rapidly metabolized; (d) does not accumulate in the body; (e) is not metabolized to a toxic material; (f) has a desirable mechanism of action; and (g) is not susceptible to the build-up by the body of a tolerance to repeated doses. All of these properties are unpredictable.

14. During the prosecution of the applications which led to the '904 patent, the United States Patent Office considered prior art in its evaluation of the patentability of chlorthalidone. Among the prior art considered was U.S. Patent # 2,860,165 issued to inventor Schraufstatter. It ap-

peared on the hearing that this was the closest prior art to chlorthalidone as was stated in the testimony of Premo's own expert and as he diagrammed it in defendant's Exhibit 41. Thus, Premo did not present at the hearing any closer reference to the patentability of chlorthalidone than had been in fact considered by the Patent Office.

15. Thus, it now appears that claim 3 of the '904 patent claims a new and useful composition of matter which was not previously known by others or described more than one year prior to the date of the application for patent; and as a whole the subject matter of claim 3 of the '904 patent would not have been obvious at the time the invention was made to a person having ordinary skill in the art. The specification of the '904 patent contains a written description of the invention, and of the manner and process of making and using it, in such appropriate terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and sets forth the best mode contemplated by the inventors of carrying out their invention. Claim 3 of the '904 patent sufficiently points out and claims the subject matter which the applicants regard as their invention. The court concludes that there is a substantial probability of USV's succeeding on the merits.

16. If Premo is allowed to continue its infringing sales of chlorthalidone, USV will be irreparably harmed. USV will lose significant future profits which will be impossible to ascertain with appropriate specificity.

17. The considerable investment that USV has in the acquisition of the '904 patent and in its financial commitment to educational and instructional programs relating to chlorthalidone will be significantly eroded.

18. The toleration of a single infringement will constitute an invitation to other infringement in the waning days of the patent which would make it substantially more difficult for USV to enforce its legiti-

mate patent rights during the remaining term of the '904 patent.

19. USV's gross profits for last year on chlorthalidone alone were $18,000,000. Premo with a net worth of but $3,500,000 may not have sufficient financial capacity to respond in damages for the extensive damage and harm it could cause to USV over the remaining life of the patent, even assuming a modest diversion of the market.

20. The balance of the equities favors USV—Premo has not made any financial contribution to the research in and development of chlorthalidone. It is a reasonable inference that Premo's recent activities were commenced (a) to obtain a "free ride" on the investment of USV and (b) to get the "jump" on other competitors before the patent expired, in the hope that, in view of the short remaining term of the patent, USV would not enforce its legitimate patent rights.

## Conclusions of Law

1. This court has personal jurisdiction over the parties and subject matter jurisdiction over the controversy under 28 U.S.C. § 1338(a). Venue is proper under 28 U.S.C. § 1400(b).

2. USV is the owner of the entire right, title and interest in and to United States Letters Patent 3,055,904, including the right to recover for infringement thereof.

3. The '904 patent has been the subject of long industry awareness with respect and acquiescence under circumstances in which there has been a strong motivation to challenge validity. Premo has not established any grounds of sufficient weight to refute the inference of validity established by acquiescence, or otherwise question its validity.

4. Premo has infringed claim 3 of the '904 patent.

5. Accordingly, on this motion for a preliminary injunction, I conclude that there appears to be no question that the patent is valid and infringed, and that the long acquiescence in its validity furnishes adequate legal basis for the relief sought. See *Car-ter-Wallace, Inc. v. Davis-Edwards Pharmacal Corp.*, 443 F.2d 867 (2d Cir. 1971).

6. Premo's infringement of the '904 patent has caused and will continue to cause substantial and irreparable harm to USV.

7. The balance of equities lies with USV and not with Premo.

8. Therefore, Premo Pharmaceutical Laboratories, Inc., its officers, agents, employees and all persons acting in concert with them, and each of them, are hereby restrained and enjoined from directly or indirectly making, using or selling, or inducing others to do the same, in the United States, its territories or possessions, the composition commonly known as chlorthalidone and claimed in United States Letters Patent No. 3,055,904 unless such chlorthalidone is manufactured or licensed by USV, until such time as the merits of this action are finally determined, or until the said patent expires on September 25, 1979, whichever first occurs. The bond of $30,000 heretofore posted in connection with the temporary restraining order is directed to be continued.

So Ordered.